[Civ. No. 17293. First Dist., Div. One. July 11, 1957.]

E. E. GILBERT, Appellant, v. CITY OF MARTINEZ et al., Respondents.

Bray, Baldwin & Ogden for Appellant.

Francis Hoey, City Attorney, for Respondents.

DRAPER, J.—Plaintiff owned land outside defendant city which he planned to subdivide. He sought water service from the city, built a pipeline extending from the city water system to his subdivision, and paid $1,400 to the city. After the number of houses in the subdivision exceeded seven, the city billed him for additional water connections at the rate of $200 per house in excess of seven. He paid under protest, and filed this action for recovery of the payments in excess of $1,400. The trial court found in defendant's favor, and entered judgment accordingly. Plaintiff appeals.

Appellant contends that he is entitled, as a third party beneficiary, to the benefits of a contract executed by respondent city in 1949. He argues that under this contract he would be required to pay only $1,400 as the total charge for connection of his subdivision, and all houses built or to be built in it, to the city-owned system. We have studied this contract and have concluded that under its terms ap-

pellant would be required to make the payments sought by the city. Thus, it is unnecessary to determine whether he is a third party beneficiary. It is, however, necessary to review the 1949 agreement in some detail to show the basis of our view of its proper construction.

In 1948, some 45 owners of land outside Martinez desired water service from the city. Pursuant to ordinance adopted by the council in September, 1948, they entered into a contract with the city dated January 26, 1949. In that agreement, the individuals are referred to as "second parties." They paid the city nearly $50,000 to cover cost of installation of an extension of the city water system to serve them, and, in addition, agreed to pay charges ranging from $200 to $1,400, depending upon the pipe size at the meter, for connections from this extended water main to their individual properties. This agreement contemplated later connections to the new main by others than second parties, and provided that such later consumers should pay at the same rate for connections to the system. To repay the sums advanced by second parties, it was provided that the city should set aside all payments for connections to the system and, in addition, a portion of the charges for water service, whether paid by second parties or by later users of the system. These sums were to be paid to second parties and, when they had been repaid in full for their advances to construct the system, were to be distributed to those, including second parties, who had paid connection fees.

Paragraph 18 provides for "attachment to said system of extension lines, to provide water service to additional areas beyond the territory to be served under the terms of this agreement." The city is required, before allowing any such extensions to be made, "to collect from the parties seeking such extension . . . a reasonable fee to be fixed" by the city, but which shall in no case "be less than the largest connection fee charge" payable under other provisions of the contract. This fee is $1,400. Appellant apparently argues that this paragraph provides for a single fee to cover the extension and all connections to it, and that the acceptance of $1,400 by the city amounted to the fixing of such a fee under the contract.

This argument completely overlooks other provisions of the contract. Paragraph 19 requires that "any and all connections made to said system by any and all future connecting consumers" shall be subject to all contract provisions relating

to "connection fee charges . . . and limitations upon number of households entitled to use one meter connection." Paragraph 8 fixes the minimum meter connection charge at $200. Paragraph 9 provides that "no more than one household shall be entitled to water service from a single water meter connection." These provisions clearly negative appellant's view that a single payment for the system extension under paragraph 18 constitutes payment of all charges for individual connections to the system thereafter. The parties who paid for the system extension under the 1949 agreement clearly bound themselves to pay additionally for their individual connections to the system for which they had paid. Even if the contract language as to later extensions of their system were less clear, it would be reasonable to construe it in the light of their own assumption of additional cost for each individual connection. The agreement is susceptible of the construction that appellant could be charged $1,400 for connection of his extension of the system, plus $200 for each house connected to the extended system. It is obvious that appellant, even if he be a third party beneficiary, has no basis for return of the payments made under protest.

Appellant next argues that the city, by express or implied contract made in its behalf by the then city administrator, agreed that its total charge would be $1,400. There is evidence that appellant wrote to the city administrator referring to the 1949 agreement and stating that he would build the extension only if he would be charged but $1,400 without additional charges for individual connections. There is testimony indicating that this letter was not received. The findings are by no means clear, and we cannot tell whether the trial court determined that the letter was or was not sent and received. Appellant introduced testimony that the then city administrator stated that appellant's written offer was in accordance with the 1949 agreement, and agreed to limit appellant's connection fees, system and individual, to $1,400. For purposes of this opinion, we assume that the letter was received, and that the administrator spoke as appellant contends.

Appellant concedes that there was no formal compliance with the city ordinance requiring written agreement by the city council for extension of its water system outside the city limits. He contends, however, that the alleged agreement of the city administrator is not ultra vires, and that the city is estopped to deny its validity and binding effect.

Appellant testified that he knew the terms of the 1949 agreement. His case is built upon the view that that contract applies to him, either as a third party beneficiary or because of agreement made by the city administrator. ▉ As pointed out in our review of the 1949 agreement, it must be construed to require payment of a minimum charge of $200 for each individual connection, either to the original extension or to any further extension thereof. Moreover, it is apparent from that agreement that such charges were for the benefit of the landowners who contracted with the city, rather than that of the city itself. The city was required to keep such fees in a separate fund and to distribute them to the landowners who had paid for the original extension. It would be clear to anyone reading the contract that its provision for the benefit of the landowners could not be waived by the city alone. In these circumstances, appellant could not have relied upon the statements of the city administrator. There is no claim that the administrator in any way misled appellant as to the terms of the 1949 contract. Appellant knew these. The most he can contend is that the administrator made some representation as to the interpretation of that agreement. Appellant himself testified that the view for which he contends was the administrator's "interpretation" of the 1949 agreement. ▉ An expression of opinion as to a matter of law is not a basis for estoppel, at least in the absence of actual or professed special knowledge or confidential relationship. (*Robbins* v. *Law*, 48 Cal.App. 555, 560 [192 P. 118].) This rule also governs an admission as to the legal effect of a contract. (19 Am.Jur. 682.) Here, there is no showing that the city administrator was an attorney, or that any confidential relationship existed. ▉ When the parties to a transaction labor under a mutual mistake of law, "acts performed in reliance upon such mutual mistake do not, as a matter of law, create an estoppel." (*Boericke* v. *Weise*, 68 Cal.App.2d 407, 418 [156 P.2d 781].) Here, it would be wholly unreasonable to hold that the city is bound by an employee's erroneous interpretation of the 1949 agreement, whose terms were well known to appellant, particularly when it was apparent on the face of the agreement that the claimed interpretation was prejudicial to the rights of 45 other parties who were not consulted as to their construction of the contract.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.