[Civ. No 30971. Second Dist., Div. Five. May 3, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. STUYVESANT INSURANCE COMPANY, Defendant and Appellant.

Edward I. Gritz for Defendant and Appellant.

Harold W. Kennedy and John D. Maharg, County Counsel, and Martin E. Weekes, Deputy County Counsel, for Plaintiff and Respondent.

AISO, J. pro tem.*—Stuyvesant Insurance Company (hereinafter, "Stuyvesant") appeals from an order denying its motion to set aside an order declaring forfeiture of the bail which it had posted on behalf of defendant Louis Stern in the principal criminal action. Raised for the first time, insofar as we are aware, is the question whether a trial court under the

---

*Assigned by the Chairman of the Judicial Council.

guise of taking a motion to vacate a bail forfeiture "under submission" can prolong the jurisdictional period in which the bail must make a showing for relief.

## Factual and Procedural Background[1]

Defendant Louis Stern was charged with sundry felonies in a seven-count information. He was released on bail on July 16, 1964, appellant Stuyvesant Insurance Company having posted its bond number 43484 in the face amount of $27,500.

On October 27, 1964, in Department West A (master calendar department of the Santa Monica Branch of the Superior Court of Los Angeles County) before Judge Mervyn A. Aggeler, defendant Stern pleaded "nolo contendere" to count VI of the information, as amended, charging him with grand theft of personal property of the value of $28,000 (Pen. Code, § 487, subd. 1). A presentence probation officer's report was ordered and further proceedings (including disposition of the other counts[2] and determination of the prior felony convictions charged against the defendant) were continued to January 12, 1965, in Department West A. Defendant Stern was permitted to remain on the bail theretofore posted.

On November 18, 1964, Deputy District Attorney Richard W. Hecht (hereinafter, "Hecht") appeared in Department West B, before Judge Edward R. Brand and moved for revocation of defendant Stern's bail. He informed the court that

---

[1]Although a set of "Findings of Fact and Conclusions of Law" were prepared by the trial judge for the assistance of this court, they were prepared subsequent to the minute order of April 12, 1966 from which this appeal was taken, and hence it can be treated only as a memorandum of decision. Forfeiture of bail is an independent matter collateral to the criminal action and is civil in nature. (*People* v. *Wilcox* (1960) 53 Cal. 2d 651, 654 [2 Cal.Rptr. 754, 349 P.2d 522].) A ruling in response to a motion does not require findings of fact. (See e.g., *Kallman* v. *Henderson* (1965) 234 Cal.App.2d 91, 96 [44 Cal.Rptr. 108] and cases there cited; *Wood* v. *Peterson Farms Co.* (1933) 132 Cal.App. 233, 235 [22 P.2d 565]; 2 Witkin, Cal. Procedure, p. 1835.) The minute order of April 12, 1966 directs the county counsel to prepare findings, but is silent as to preparing a formal written order. The county counsel did prepare a formal order, but the trial court did not sign it. Hence the findings and conclusions are not the supportive foundation of any order and will be treated as a memorandum of decision. (Cf. *Sheta* v. *Grahm* (1957) 156 Cal.App.2d 77, 80 [318 P.2d 756].) A memorandum of decision cannot serve as a substitute for an evidentiary record but is of value in ascertaining the trial court's theory of decision (*Estate of Johnson* (1966) 240 Cal.App.2d 742, 747 [50 Cal.Rptr. 147]) or the process by which it reached its conclusions (*Wechsler* v. *Capitol Trailer Sales, Inc.* (1963) 220 Cal.App.2d 252, 262 [33 Cal.Rptr. 680].)

[2]The other counts charged were: extortion (Pen. Code, § 518) in count I; criminal conspiracy (Pen. Code, § 182, subd. 4) in counts II, III and VII; grand theft (Pen. Code, § 487, subd. 1) in count IV; and issuing checks without sufficient funds (Pen. Code, § 476a) in count V.

Stern had shot three persons outside of a Palm Springs tavern. Judge Brand made an ex parte order revoking bail. A bench warrant with no bail fixed was ordered to issue. Judge Brand's order was silent as to any forfeiture of bail.

Defendant Stern fled to Europe in November of 1964. He was in Tel-Aviv on November 28 and went to London on December 29, 1964. Thereafter, Stern traveled between Spain, England, Israel and Portugal until he was arrested in London in early November 1965 by members of the Scotland Yard, accompanied by F.B.I. Agent Eldon McCrary attached to the United States Embassy in London. Stern's first appearance in court subsequent to his flight was on March 15, 1966, following his extradition. On that date, he appeared in Department West B and was sentenced to state prison by Judge Brand.

In returning to a more detailed chronology of events after November 18, 1964, the minute orders insofar as they are relevant to any issue raised upon this appeal will be quoted in detail. Stuyvesant's contentions upon appeal include a claim that the transfer of the bail forfeiture question for ultimate determination to Judge Arthur L. Alarcon, presiding in Department 100 (the criminal master calendar department of the central district) was error in that the matter was under submission before Judge Mervyn A. Aggeler of the Santa Monica Branch Court.

*January 12, 1965.* Department West A. Mervyn A. Aggeler, Judge. "Deputy District Attorney R. Immerman and Defendants' counsel, Paul Caruso, present. Sam Brody appears as counsel for Bond Styv [sic] Insurance Company. Defendant Rocco Passanante: [a codefendant] Defendant's motion to have bail revocation of November 18, 1964 set aside and bench warrant recalled, is denied. Each: Bail forfeited. Bench Warrant issued. No bail."

*April 1, 1965.* The law firm of Brody, Grayson & Green filed a notice of motion entitled, "NOTICE OF MOTION TO SET ASIDE FORFEITURE, APPLICATION FOR ORDER SHORTENING TIME, ORDER SHORTENING TIME AND POINTS AND AUTHORITIES." Hearing thereon was set for April 6, 1965, in Department West A. The notice, dated March 31, 1965, showed service on District Attorney Evelle J. Younger and upon defendant's attorney Caruso. No affidavit or declaration setting forth any facts was attached to the notice of motion or filed. Under the portion labelled, "Points and Authorities," it was contended that Judge Brand's November 18, 1964 order revoking bail and causing bench warrant to issue was in error (citing Pen.

Code, § 1271)[3] and that the order of January 12, 1965, order-
ing bail forfeiture was likewise in error (citing Pen. Code,
§ 1310).[4]

*April 6, 1965.* Department West A. Mervyn A. Aggeler,
Judge. ''Joseph Vodnoy appears for bond. Matter is submit-
ted. Ruling on motion set for June 8, 1965, 10 A M.''

*April 13, 1965.* Hecht filed a memorandum in opposition to
the motion to set aside the bail forfeiture, which was never
withdrawn.

*June 8, 1965.* Department West A. Mervyn A. Aggeler,
Judge. ''Deputy District Attorney W Ritzi present. Motion of
bonding company, to vacate bail forfeiture is resubmitted, and
set for hearing on June 29, 1965, 10 A M. Sam Broady [*sic*]
appears for bonding company.''

*June 29, 1965.* Department West A. Mervyn A. Aggeler,
Judge. ''Deputy District Attorney R. Hecht present. Bonding
Company's motion to set aside bail forfeiture is re-submitted
and set for hearing on July 27, 1965 at 10 A M, in West
A.''

*July 27, 1965.* Department West A. Kurtz Kauffman,
Judge. ''Deputy District Attorney R. Hecht, present. Motion
to vacate bail forfeiture. Pursuant to stipulation, this matter
is re-submitted and set for hearing on October 26, 1965, 9 A.M.
J. Vodnoy appears for bonding company.''

*October 26, 1965.* Department West A. Mervyn A. Aggeler,
Judge. ''Motion to vacate bail forfeiture. Saul Grayson
appears for Bond. Pursuant to stipulation this motion hereto-
fore submitted is now ordered re-submitted. Matter is set for
further proceedings on January 25, 1966 at 10 A.M. in
Department West A.'' Hecht's appearance is also shown.

*January 25, 1966.* Department West A. David W. Williams,
Judge. ''Motion to set aside bail forfeiture, heretofore submit-
ted is at request of Attorney for Bond, re submitted [*sic*] and
set for hearing on February 21, 1966 at 9 A M in Department
West A.'' It shows the appearance of P. Caruso only.

*March 10, 1966.* Department 100. Arthur L. Alarcon, Judge.
''By order of Presiding Judge Lloyd Nix, motion to set aside

[3]Penal Code section 1271: ''If the charge is for any other offense, he
may be admitted to bail before conviction, as a matter of right.''

[4]Penal Code section 1310 in part of any possible relevance to this case:
''The court . . . in which an indictment, information . . . is pending
. . . may, by an order entered upon its minutes, direct the arrest of the
defendant and his commitment to the officer to whose custody he was
committed at the time of giving bail, and his detention until legally dis-
charged, in the following cases: 1. When, by reason of his failure to
appear, he has incurred a forfeiture of his bail . . .''

bail forfeiture is transferred to Department 100 on March 15, 1966 at 3 P.M. Clerk is directed to notify counsel (Deputy District Attorney R. Hecht and S. Broady [sic], representing Stuyvesant Insurance Company, are notified).''

*March 15, 1966.* Department West B. Edward R. Brand, Judge. "Defendant returns to court following extradition. Count 2 [sic] : Probation denied. Sentenced to State Prison. Other counts dismissed. Remanded." Appearances of Hecht and Paul Caruso are recorded.

*March 15, 1966.* Department 100. Arthur L. Alarcon, Judge. Appearances by Hecht and E. Gritz for bonding company. "Order setting motion set aside. Forfeiture on calendar in West A on March 21, 1966 is vacated. Motion is set in Department 100 March 24, 1966 at 2 :00 P.M. Pursuant to stipulation, Defendant need not be present on March 24, 1966." No opposition by Gritz is recorded.

*March 24, 1966.* Department 100. Arthur L. Alarcon, Judge. Appearance of J. Leavy for district attorney is recorded. "E Gritz by J. Vodnoy for bonding company, present. On joint motion of People and bonding company, motion to vacate bail forfeiture is continued to April 12, 1966 at 2 P.M."

*April 11, 1966.* Harold W. Kennedy, County Counsel of Los Angeles County by Martin E. Weekes, Deputy County Counsel filed a memorandum of points and authorities in opposition to the bonding company's motion to set aside the bail forfeiture.

*April 12, 1966.* Department 100. Arthur L. Alarcon, Judge. "On calendar for motion of bonding company to set aside and vacate bail forfeiture of January 12, 1965. Samuel Brody for Stuyvesant Insurance Company and Deputy County Counsel Martin Weekes for the County of Los Angeles, present. Motion of bonding company to transfer hearing to West District before Judge Aggeler is denied. Motion of bonding company for one day continuance to file a writ of prohibition is denied. Richard W Hecht, Abe Phillips, J Miller Leavy, Elvyn Holt and Samuel Brody are sworn and testify for the bonding company. Bonding company exhibit A (statement dated 7/23/65) is received into evidence. Issue is argued and submitted. Court finds it has no jurisdiction, there being no evidence of compliance with provisions of Section 1305 Penal Code.[5] Motion to set aside bail forfeiture is denied. On

[5] Penal Code section 1305 on January 12, 1965 provided for a 90-day period in which the defendant or the surety had to act. It was later amended to 180 days (Stats. 1965, ch. 206, effective Sept. 17, 1965). The 90-day period is the one applicable to this case.

request of District Attorney, Court orders reporter to prepare a transcript (original and two copies) of these proceedings. County counsel is directed to prepare findings within three weeks.''

The reporter's transcript of the hearing on April 12, 1966 before Judge Alarcon supplies further details. The testimony elicited from the bonding company's witnesses Hecht, Abe Phillips and Samuel Brody established the following facts without contradiction. Neither on January 12, 1965 nor within 90 days thereafter did defendant Stern appear in court. No evidence oral or written was ever produced that during that period defendant Stern had died or was unable to appear in court by reason of illness or insanity or by reason of detention by any civil or military authorities. Stuyvesant likewise produced no evidence until the April 12, 1966 hearing that defendant Stern's failure to appear was without its connivance.

On April 12, 1966 hearing, it was brought out that attorney Brody had a conversation with a Mae Stern, wife or girl friend of Stern, that a wealthy owner of a gaming house in England would deposit the sum of $27,500 by certified check if Phillips, the general agent for Stuyvesant in California and the bail bondsman who had posted the bail bond, would not persist in trying to bring Stern back to Los Angeles. Phillips also signed and delivered to Elvyn Holt, the extradition officer of the Los Angeles District Attorney's office, a document on the letter head of the Stuyvesant Insurance Company dated July 23, 1965, and reading: ''Re Louis Stern; Extradition, London, England. I, Abe Phillips, will pay all expenses including Barrister fee.'' (Exhibit A.)

On January 12, 1965, Attorney Brody had merely informed the court that ''. . . Mr. Phillips had been searching for Mr. Stern and had information and was in the process of corroborating it, that Mr. Stern was in the area of England, in Europe, particularly England.''

The only representation which Hecht made to Stuyvesant was that the People would withdraw their opposition to Stuyvesant's motion if Phillips were instrumental in returning Stern to the jurisdiction of the court.

J. Miller Leavy, deputy district attorney and chief of the trials division, first became personally aware of the case when attorney Brody and Phillips went to see him on or about July 8, 1965. At that time, Leavy had the extradition file before him. Another deputy had previously approved the extradition. Leavy inquired of Brody and Phillips if the bond

forfeiture were being protected and they assured him that it was being protected in Santa Monica where the matter was being handled. Phillips at that meeting proposed to pay all the expenses of extradition, including the expense of Queen's Counsel that had been employed in England for the extradition. Leavy stated that if Phillips would give the offer in writing, the district attorney's office would make every effort to return Stern to the United States.

As indicated in the minute order of April 12, 1966, counsel for Stuyvesant objected to the hearing before Judge Alarcon upon the ground that the matter was under submission by Judge Aggeler and that Department 100 therefore lacked jurisdiction to hear the matter. The objection was overruled and request to retransfer the matter to Judge Aggeler for disposition was denied.

Stuyvesant's counsel also made an offer of proof, which Judge Alarcon rejected, namely, that in a conversation with Hecht, Judge Aggeler stated that he ''felt that Section 1305 was complied with in that Abe Phillips should not be stuck for the $27,500 bail bond.''

The only matters submitted before Judge Aggeler were the written motions for and against vacation of the bail forfeiture, which as earlier noted were unsupported by either affidavit or declaration. No testimony was ever offered in court by Stuyvesant prior to the April 12, 1966 hearing. Hecht anticipated that either Judge Aggeler or his successor as master calendar judge, Judge Williams, would determine the validity of his motion in opposition to Stuyvesant's motion to vacate the bail forfeiture. When Judge Williams ''re-submitted'' the matter on January 25, 1966 and set the hearing for February 21, 1966, no statements were made to the court. Judge Williams merely continued the matter to the new date.

Hecht never opposed the ''submission'' or the ''re-submissions and continuances.'' In fact, he urged ''. . . the matter being taken under submission and continued to another date . . .'' The one time he did not personally appear in court, he left instructions, ''To resubmit the matter.''

## APPELLANT'S CONTENTIONS

The appellant Stuyvesant contends that the April 12, 1966 order denying the motion to vacate the January 12, 1965 bail forfeiture order should be reversed for the following reasons:

1. The trial court erred in not setting aside and vacating the forfeiture, upon such terms as it might deem just, since the surety appeared within 90 days after the forfeiture and

showed to the court that the absence of the defendant was not with the connivance of the bail.

2. Respondent People are estopped by the acts of their representatives, the Deputy District Attorneys of Los Angeles County, from opposing and preventing the vacation of the order forfeiting the bail bond written by Stuyvesant Insurance Company.

3. The surety was exonerated when without notice to it, the court ex parte revoked the bond of defendant Stern on November 18, 1964 for alleged offenses not connected with the instant case.

4. Judge Alarcon erred in denying the motion of Stuyvesant to transfer the proceedings in connection with the vacation of the forfeiture to Judge Aggeler.

We have concluded that none of these contentions are valid and that Judge Alarcon was correct in his ruling that since there was no compliance with the requirements of section 1305 of the Penal Code, the court lacked jurisdiction to entertain any request to chancer the forfeiture.

## COMPLIANCE WITH PENAL CODE SECTION 1305
### JURISDICTIONAL

A showing that the absence of the defendant was not with the connivance of the bail is not grounds for setting aside a bail forfeiture unless "within 90 days after such entry [of forfeiture] in the minutes, *the defendant and his bail appear.*" (Italics added.) Where the defendant fails to appear within the 90-day period, the applicable portion of section 1305 is: "*If within 90 days after such entry in the minutes, it be made to appear to the satisfaction of the court* that the defendant is dead or is physically unable, by reason of illness or insanity, or by reason of detention by civil or military authorities, to appear in court at any time during said 90 days, *and* that the absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just." (Italics added.)

It is undisputed that defendant did not appear in court on January 12, 1965, nor during the 90 days' period thereafter, nor was any proof ever offered that during that period defendant Stern was unable to present himself in court because of his death or physical inability due to illness, insanity, or detention by any civil or military authority. Civil Code section 2781 provides: "The obligations of bail are governed by the statutes specially applicable thereto." And

the provisions of Penal Code section 1305 have been held to be jurisdictional. (*People* v. *Black* (1961) 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358 P.2d 915] ; *People* v. *Stuyvesant Ins. Co.* (1963) 216 Cal.App.2d 380, 382 [31 Cal.Rptr. 208].) Even where the notice of motion to vacate an order of forfeiture was accompanied by an affidavit, it has been held that a continuance of the hearing at the bonding company's request beyond the 90-day period caused the court to lose jurisdiction except to enter a summary judgment against the bail. (*People* v. *National Auto. & Cas. Co.* (1966) 242 Cal.App.2d 150, 153-154 [51 Cal.Rptr. 212].) Here there was not even a commencement of the required showing within the 90-day period which the court speaks of in *People* v. *Wilcox* (1960) *supra,* 53 Cal.2d 651, 657. In fact this case presents the situation which Justice White stated was not the situation in *Wilcox* when he stated, at page 656: "This is not a case where the defendant fled the jurisdiction of the court, surreptitiously disappeared, failing to contact his counsel or to advise the court of the reason for his absence." Here the defendant did just that. Judge Alarcon properly concluded that he had no jurisdiction to vacate the forfeiture or to entertain any appeal *ad misericordiam* to discharge the undertaking upon "such terms as may be just."

No Estoppel

 Stuyvesant's contention that the representations of the district attorney's office through its several deputies estops the state from invoking the forfeiture provisions of the Penal Code lacks merit. It is also unnecessary to decide the county counsel's contention that no estoppel can arise as Stuyvesant should have dealt with the county counsel's office instead of the district attorney's office.[6]

The most that the deputy district attorneys represented is that if Phillips were instrumental in bringing defendant Stern back, the district attorney's office would withdraw its opposition to Stuyvesant's motion to vacate the forfeiture. Even if the district attorney had fully performed its representation, it could not have affected the disposition of the motion to vacate the bail forfeiture in this case. Here there was no jurisdiction and it is well settled that subject matter jurisdiction cannot be conferred upon a court by consent of the parties or estoppel. (*Fong Chuck* v. *Chin Po Foon* (1947)

---

[6]On division of authority between county counsel and district attorney, see *People* v. *Hadley* (1967) 257 Cal.App.2d Supp. 871, 878-879 [64 Cal. Rptr. 777].

29 Cal.2d 552, 554 [176 P.2d 705]; *Bevelle* v. *Bank of America* (1947) 80 Cal.App.2d 333, 334 [181 P.2d 730]; cf. *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].) No withdrawal of opposition to the motion to vacate the forfeiture or consent to a vacation by the district attorney could constitute a factor which the judge ruling upon the motion could have considered under the facts of this case.

Furthermore, the requirements for invoking an estoppel, even if estoppel were available, have not been met. ■ "Generally, speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury [citations]." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ Stuyvesant cannot claim ignorance of the true state of facts where it is primarily a knowledge of the applicable law. The law was as open to Stuyvesant's counsel as it was to the district attorney. In *People* v. *Stuyvesant Ins. Co., supra,* 216 Cal.App.2d 380, 381-382, it had learned that the provisions of sections 1305 and 1306 of the Penal Code were both mandatory and jurisdictional. ■ Where the facts and law are known to both parties, there can be no estoppel. (*California Cigarette Concessions, Inc.* v. *City of Los Angeles* (1960) 53 Cal.2d 865, 871 [3 Cal.Rptr. 675, 350 P.2d 715].)

■ Even an expression as to a matter of law, in the absence of a confidential relationship, is not a basis for an estoppel. (*Gilbert* v. *City of Martinez* (1957) 152 Cal.App.2d 374, 378 [313 P.2d 139].) Nor do acts performed under a mutual mistake of law constitute grounds for estoppel. (*Gilbert* v. *City of Martinez, supra.*)

### BAIL NOT EXONERATED BY ORDER REVOKING BAIL

■ The ex parte revocation of bail by the court on November 18, 1964 did not exonerate the bail. A plea of "nolo contendere" is equivalent to a guilty plea in a criminal action. (Pen. Code, § 1016.) Upon the entry of such a plea, defendant Stern became an unsentenced but convicted defendant. (*People* v. *Fidelity & Deposit Co.* (1930) 107 Cal.App. 160, 163 [290 P. 59].) When Stern was admitted to bail, Judge Brand had warned him that if he got into any further trouble prior to the termination of his criminal action that

bail would be revoked. Bail was ordered revoked only after he had shot three persons outside of a Palm Springs tavern. In *People* v. *Fidelity & Deposit Co., supra,* at pp. 164-165, the court stated: "It is also argued that there must be some hearing or showing before the trial court can exercise such a discretion, and that appellant was entitled to notice thereof. The court may exercise the discretion given by section 1129 of the Penal Code[7] without any hearing or showing, and without notice."

A defendant released on bail is deemed to be in custody of his bail. (*People* v. *McReynolds* (1894) 102 Cal. 308, 311-312 [36 P. 590]; *City & County of San Francisco* v. *Randall* (1880) 54 Cal. 408, 411; *Bean* v. *County of Los Angeles* (1967) 252 Cal.App.2d 754, 758 [60 Cal.Rptr. 804]; *County of Los Angeles* v. *Maga* (1929) 97 Cal.App. 688, 690-691 [276 P. 352].) It is only when the defendant is taken into actual custody of the sheriff pursuant to an order revoking bail and remanding a defendant to custody that the bail becomes exonerated. Just a statement by the court, "defendant is remanded into custody" is inadequate. (*People* v. *McReynolds* (1894) *supra,* 102 Cal. 308, 311-312; *People* v. *Scott* (1960) 184 Cal.App.2d 792, 794 [7 Cal.Rptr. 755].)

Stuyvesant never surrendered Stern into the custody of the sheriff prior to extradition. He was not even arrested on the bench warrant issued pursuant to the order of November 18, 1964, revoking bail.

DENIAL OF RETRANSFER NOT ERROR

Judge Alarcon's denial of Stuyvesant's motion to retransfer the cause to Judge Aggeler's court did not constitute error.

In a multi-department superior court such as the Superior Court of Los Angeles County which has 134 judges, almost the same number of departments and courtrooms in 13 different cities, " 'Jurisdiction is vested by the constitution in the court, not a particular judge or department . . . Whether sitting separately or together, the judges hold but one and the same court. The division into departments is for the convenient dispatch of business. [Citation.] A transfer from one department to another is not a transfer of the jurisdiction of the cause, which remains at all times in the court as a single

[7]Penal Code section 1129: "When a defendant who has given bail appears for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide judgment or further order of the court, and he must be committed and held in custody accordingly."

entity. [Citations.]'" (*Thomasian* v. *Superior Court* (1953) 122 Cal.App.2d 322, 331-332 [265 P.2d 165].) ▮ At the same time, "[W]here a proceeding has been duly assigned for hearing and determination to one department of the superior court by the presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned. [Citation.] In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof are as distinct therefrom as other superior courts." (*Williams* v. *Superior Court* (1939) 14 Cal.2d 656, 662 [96 P.2d 334].) ▮ Hence in this case if the motion to set aside the bail forfeiture and the motion in opposition thereto were in fact and in law under submission in Judge Aggeler's department, then disposition of the cause was in the jurisdiction of his department and could not have been removed to Judge Alarcon's department. But had the matter been submitted? Did Judge Aggeler have jurisdiction which would permit his exercise of a judicial discretion? We answer both of these questions, "No."

▮ A cause is submitted when the court, trying the issues without a jury, has heard the evidence and the arguments of counsel and has taken the cause under advisement. (*Jalof* v. *Robbins* (1941) 19 Cal.2d 233, 235 [120 P.2d 19]; *MacDermot* v. *Grant* (1919) 181 Cal. 332, 334 [184 P. 396].) A continuance of a cause for further hearing is inconsistent with its submission. (*Jalof* v. *Robbins, supra.*) Advisement is "The consultation of a court, after argument by counsel, and before delivering their opinion." (Black's Law Dictionary (4th ed., 1951).) "A court takes a case under 'advisement' when, following a trial, it delays rendering judgment until it has examined and considered the question involved." (Ballentine's Law Dictionary (1930).)

Holding a purported submission upon an agreed set of facts abortive where the facts are insufficient to determine the cause, the Supreme Court of Montana in *McCarthy* v. *Employees' Fire Ins. Co.* (1934) 97 Mont. 540 [37 P.2d 579, stated at page 582, 97 A.L.R. 292], ". . . [A] case is not 'submitted' to the court sitting without a jury, until all that is necessary to a decision is before the court, and the court has taken the matter under advisement."

On April 6, 1965 when Stuyvesant's motion to set aside Judge Aggeler's order of January 12, 1965, effecting bail forfeiture came on for hearing before Judge Aggeler, only the written notice of motion unsupported by any affidavit or declaration was before the court. No evidence oral or written was adduced. There was no hearing. "A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence." (*People* v. *Pennington* (1967) 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942].) The minute order reads, "Matter submitted. Ruling on motion set for June 8, 1965, 10 A M." On June 8, 1965, Judge Aggeler made the following order: "Motion of bonding company, to vacate bail forfeiture is resubmitted, and set for hearing on June 29, 1965, 10 A M." Thereafter every order purporting to effect a resubmission of the motion made by various judges, Judges Aggeler, Kurtz Kauffman, and David W. Williams, all set the motion down for further hearing or for further proceedings until the matter was transferred to department 100 by Presiding Judge Lloyd Nix, the then Presiding Judge of the Superior Court of Los Angeles County.[8]

Since no proof of jurisdictional facts which would enable

---

[8]Government Code section 69508: "The judges of each superior court in which there are more than two judges sitting, shall choose, from their own number, a presiding judge, who may be removed as such at their pleasure. Subject to the regulations of the Judicial Council, he shall distribute the business of the court among the judges and prescribe the order of business."

California Rules of Court, rule 245(a)(3). "Cases assigned to any department may be reassigned by the presiding judge to any other department as convenience or necessity requires."

The Rules of the Superior Court of Los Angeles County provide in part pertinent to this case as follows:

"RULE 1, § 1. The business of this court shall be supervised by one of the judges, to be known as the Presiding Judge, who shall be chosen as provided in Rule 32, *infra* . . .

"RULE 19, § 4. Notwithstanding any other provisions of these rules, any criminal action or any proceeding therein which is pending in a district other than Central District may be transferred by the Master Calendar Judge of such district in which it is pending or by the Presiding Judge, to any other district designated by the Presiding Judge, when it appears, from the stipulation of counsel, or otherwise, that such transfer would serve the greatest convenience of witnesses or otherwise promote the ends of justice, and all proceedings therein subsequent to the trial shall be heard by the judge who tried the case, unless otherwise ordered.

"RULE 21, § 1(d). The Master Calendar Judge in each district shall supervise the condition of the trial calendars of the departments of such district and readjust the assignment of cases and transfer cases from one of said departments to another as may be necessary to best dispose of the business. The action of said Master Calendar Judge shall be subject to the general powers of the Presiding Judge." (Cf. *White* v. *Superior Court* (1895) 110 Cal. 60, 67-68 [42 P. 480].)

Judge Aggeler to exercise a judicial discretion was ever presented or even commenced to be presented before him and since the provisions of Penal Code section 1305 and 1306 are mandatory (*People* v. *Stuyvesant Ins. Co.*, (1963) *supra*, 216 Cal.App.2d 380, 381-382), even if the parties intended a submission sans evidence and sans argument (without a hearing) a denial of the motion to vacate would have been mandatory.

The parties, however, did not contemplate a disposition of the motion to be made by Judge Aggeler and by no other judge. When Judge Williams succeeded Judge Aggeler as master calendar judge of the Santa Monica Branch Court by virtue of a regular rotation or re-assignment of judges at the beginning of a new calendar year, the parties themselves anticipated that Judge Williams would make the disposition, as he had the right to do. (*Cohn* v. *Superior Court* (1936) 13 Cal.App.2d 565, 568 [57 P.2d 186].)[9] But no hearing was ever held before Judge Williams in the sense of taking evidence and hearing argument or getting a waiver of these essential parts of a judicial hearing.

Despite the use of the words, "submission" or "re-submission," the minute orders continued the cause for further hearings or dispositions. The orders were tantamount in legal effect only to a continuance of the hearing date. Presiding Judge Nix's order transferring hearing of the motion to Judge Alarcon's court, Department 100 was a legal removal of the cause from the Santa Monica branch court and Department West A thereof.

For the foregoing reasons, Stuyvesant's objection that Judge Alarcon lacked jurisdiction to hear the motion to vacate the bail forfeiture was properly overruled, and the motion to retransfer the cause to Judge Aggeler's court was properly denied. There was likewise no error in rejecting Stuyvesant's counsel's offer of proof that in a conversation with Hecht, Judge Aggeler stated, "he felt that Section 1305 was complied with in that Abe Phillips should not be stuck for the $27,500 bail bond."

The order denying vacation of the order of January 12, 1965, ordering bail forfeiture is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.

---

[9]The court there stated at page 568: "While in some cases the orderly and expeditious handling of the work of the court may suggest the advisability of permitting a judge assigned to another department to complete a matter which he had started to hear before the change in assignments, *there is no vested right to have this done in all cases.*" (Italics added.)