656 F.2d 1380
 SHAMROCK DEVELOPMENT COMPANY, a California corporation,
formerly known as El Dorado Electronics, Plaintiff-Appellee,
v.
CITY OF CONCORD, a municipal corporation and Redevelopment
Agency of the City of Concord, Defendants-Appellants,
and
Black Corporation, White Corporation, et al., Defendants.
SHAMROCK DEVELOPMENT COMPANY, a California corporation,
formerly known as El Dorado Electronics, Plaintiff-Appellant,
v.
CITY OF CONCORD, a municipal corporation, Redevelopment
Agency of the City of Concord, et al., Defendants-Appellees.
 Nos. 79-4607, 79-4617.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 13, 1981.
Decided Sept. 25, 1981.
 
 Kenneth C. Scheidig, Asst. City Atty., Concord, Cal., for City of concord.
 James M. Berg, Dooley, Anderson, Berg & Pardini, San Francisco, Cal., for Shamrock Development Co.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN and BOOCHEVER, Circuit Judges, and PALMIERI,* District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 Both parties appeal a judgment awarding damages to Shamrock in an action asserting that the City of Concord improperly had conditioned approval of Shamrock's subdivision upon the dedication by Shamrock of land for city street expansion.
 
 
 2
 The City contends on appeal that: (1) the district court erred by failing to abstain from hearing this case; (2) Shamrock's request for monetary damages failed to state a cause of action; (3) a contract between Shamrock and the City purporting to settle the dedication question estops Shamrock from obtaining relief in inverse condemnation; (4) error of law infected the jury instructions; and (5) the jury verdict of $43,000 for Parcel D should be set aside because of prejudicial remarks made in the presence of the jury by counsel for Shamrock.
 
 
 3
 Shamrock contends on appeal that the district court erred by: (1) ordering a remittitur in the amount of damages; (2) denying Shamrock's request for attorney's fees; and (3) failing to award prejudgment interest accruing from the date of taking.
 
 I. FACTS
 
 4
 In August 1975 Shamrock Development Company arranged to purchase a 5.7 acre parcel of unimproved land on Willow Pass Road in Concord, California. In order to finance this transaction, Shamrock sold corner lots of this tract to Denny's Restaurants and Collins Foods International, Inc. (Sizzler Steak Houses). The contract with Sizzler Steak Houses provided that Sizzler could cancel the agreement if Shamrock failed to obtain a use permit for a restaurant, and made Shamrock responsible for complying with all conditions of the use permit.
 
 
 5
 Shamrock obtained the use permit on November 17, 1976. The City conditioned its approval upon the dedication by Shamrock of enough land along Willow Pass Road to widen the road from four to six lanes, and to add a bus stop and right-turn lane. The City had planned to widen Willow Pass Road from four to six lanes since the 1960's, but a 1968 bond issue and an application for federal funds had failed to secure the necessary financing.
 
 
 6
 Shamrock also needed City approval of a parcel map in order to subdivide its property for sale to the restaurant chains. On January 27, 1977, the City's Minor Subdivision Committee approved Shamrock's parcel map designating as dedicated to the City 19,491 square feet along Willow Pass Road, conditioning its approval upon the dedication and construction by Shamrock of two westbound traffic lanes, a bus stop and a right-turn lane. Shamrock did not challenge the decision during the statutory appeal period, Concord Municipal Code § 4453(C)(4), but on March 21, 1977, upon the suggestion of the Concord City Manager, Shamrock contacted the City Council's Engineering Requirements Committee requesting relief from the "excessive property dedication" conditions.
 
 
 7
 On April 12, 1977, the City and Shamrock executed a contract drafted by the City Attorney dividing the 19,491 square foot strip along Willow Pass Road into two parcels: Parcel D (7,742.4 square feet for the right-turn lane) and Parcel E (11,748.6 square feet for two westbound lanes). The contract recites that Shamrock dedicates Parcels D and E to the City. The contract provides that the City will compensate Shamrock for the fair market value of Parcel D, but says nothing about compensation for Parcel E. On April 13, 1977, Shamrock recorded the parcel map. The City Council had exercised its option not to accept the areas designated on the map as dedicated to the public. See Cal. Gov't Code § 66477.1. On April 14, 1977, Shamrock recorded its deed to Sizzler.
 
 
 8
 Shamrock constructed the street improvements required by the contract and opened the new lanes to the public on September 10, 1977. The City and Shamrock subsequently could not agree on the fair market value of Parcel D. Shamrock valued the parcel at $43,000; the City appraised the parcel at $18,970. On February 16, 1978, Shamrock instituted the present action. Shamrock contended that the City's excessive dedication requirements constituted a taking, and that the City was estopped from asserting the dedication of Parcel E under the April 12, 1977 contract because Shamrock had executed the agreement in reliance upon the City's misstatements of its authority to require the dedication of both Parcels D and E.
 
 
 9
 The jury returned special verdicts adding up to $197,430, representing $43,000 compensation for Parcel D and the balance as an award for that portion of Parcel E excessively exacted by the City, along with "post-condemnation delay" damages. The magistrate who presided at the trial gave Shamrock the choice of a remittitur reducing the award to $105,590 or a new trial on both liability and damages. The district court upheld the remitted verdict under a contract, rather than an inverse condemnation theory, finding an implied agreement by the City to compensate Shamrock for Parcel E. The district court rejected the magistrate's recommended $35,035 award for attorney's fees. Both sides appeal.
 
 II. JURISDICTION
 
 10
 A federal court can decide cases only when it has subject matter jurisdiction. Where, as here, the parties fail to discuss jurisdiction, the court must raise the issue sua sponte. Mansfield, Coldwater & Lake Michigan Ry. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884). We hold that Shamrock's "taking" claim presented a cognizable federal question permitting the district court to entertain both the federal and pendant state causes of action in this case.
 
 
 11
 The City contends that Shamrock had no basis for a claim of inverse condemnation either under California law or as a taking forbidden by the Fourteenth Amendment. The City cites Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), wherein the Supreme Court affirmed the California Supreme Court's holding that a municipal zoning ordinance did not effect a taking of plaintiff's property. The Agins Court expressly reserved judgment, however, on the California court's conclusion that a landowner could not recover monetary damages as compensation for excessive police power regulation of land. On March 24, 1981, the Supreme Court again left the question "barely open" in San Diego Gas & Electric Co. v. City of San Diego, et al., --- U.S. ----, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981), dismissing the case on the grounds that the decision of the California Court of Appeals did not constitute a final judgment. Nonetheless, the majority observed that "the federal constitutional aspects of that issue are not to be cast aside lightly." --- U.S. at ----, 101 S.Ct. at 1294. Four Justices dissented, contending that the decision was a final judgment and arguing on the merits that a police power regulation can effect a Fifth Amendment "taking," thereby entitling the landowner to just compensation.
 
 
 12
 This court has indicated "that a governmental agency acting pursuant to the State's police power must pay just compensation for any taking it effects." Richmond Elks Hall Assn. v. Richmond Redevelopment, 561 F.2d 1327, 1332 (9th Cir. 1977) (dicta). Shamrock's contention that the City's allegedly excessive dedication requirements effected a compensable taking therefore presents a federal question within the subject matter jurisdiction of the district court. For reasons stated later in this opinion, however, the contract of April 12, 1977, makes it unnecessary for us to determine whether this landowner's remedy for allegedly excessive use of police power is limited to declaratory relief or mandamus.[1]
 
 III. ABSTENTION
 
 13
 The City contends that the district court should have abstained from hearing this case. A federal court ordinarily must decide cases properly before it; therefore, "(a)bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Cons. Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). A federal court may postpone the exercise of federal jurisdiction when "a federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law." Allegheny County v. Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). This court will reverse a trial court ruling on abstention, however, only if the ruling constitutes an abuse of discretion. Sederquist v. City of Tiburon, 590 F.2d 278, 281 n.5 (9th Cir. 1978).
 
 
 14
 In Canton v. Spokane School District # 81, 498 F.2d 840, 845 (9th Cir. 1974), this court interpreted Pullman as requiring abstention if three tests were met:
 
 
 15
 "(1) The complaint 'touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.'
 
 
 16
 (2) 'Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.'
 
 
 17
 (3) The possibly determinative issue of state law is doubtful."
 
 
 18
 The advent of possibly conflicting federal and state court standards of "reasonableness" guiding California subdivision dedication requirements could serve to further obscure the already vague line marking the extent to which a California city may exact land as a condition of subdivision map approval. See generally, Note, "Taking Without Compensation Through Compulsory Dedication New Horizons for California Land Use Law", 5 Loyola L.Rev. 218 (1972). As Judge Coffin recently observed, "(f)ederal enforcement of the inverse condemnation remedy (in a zoning case) would be a singularly inappropriate intrusion into the states' traditional domains of property law and land-use policy." Pamel Corp. v. Puerto Rico Highway Authority, 621 F.2d 33, 36 (1st Cir. 1980).
 
 
 19
 The second and third prongs of the Canton test are interrelated. Shamrock contends that excessive dedication constitutes a taking without just compensation under the California Constitution. Shamrock further argues that Agins v. City of Tiburon, 24 Cal.3d 266, 598 P.2d 25, 157 Cal.Rptr. 372 (1979), aff'd, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (declaratory relief and mandamus only, not monetary damages, are available in an action challenging a zoning ordinance that allegedly destroyed value of zoned property) does not apply to Subdivision Map Act, Cal. Gov't Code, § 66475, et seq., dedication requirements, and cannot apply when, as here, the public use has attached to the subject property thereby rendering useless the mandamus remedy.
 
 
 20
 This was a case in which abstention would have been advisable, and well within the discretion of the court. Sederquist v. City of Tiburon, supra. State law questions clearly predominated over federal questions. But we have no basis for holding that it was an abuse of discretion to retain the case. We turn to the merits.
 
 IV. THE MERITS
 
 21
 The City contends that the district court erred by denying its motions for directed verdict, judgment notwithstanding the verdict, and new trial because the April 12, 1977 contract barred Shamrock from recovering inverse condemnation damages. Shamrock responds that the City is estopped from enforcing that contract because Shamrock entered into the agreement in reliance upon the City's misrepresentations of its authority to exact dedications under the Subdivision Map Act. The magistrate left the question to the jury, which apparently concluded that the City was estopped from asserting the contract as a bar.
 
 
 22
 Under California law, "(e)quitable estoppel is available against the government where justice and right require it." Palo Alto Inv. Co. v. County of Placer, 269 Cal.App.2d 363, 366, 74 Cal.Rptr. 831, 833 (1969). The required elements are that "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be relied upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." Driscoll v. City of Los Angeles, 67 Cal.2d 297, 305, 431 P.2d 245, 250, 61 Cal.Rptr. 661, 666 (1967). Equitable estoppel ordinarily presents a question of fact unless only one reasonable conclusion can be drawn from undisputed facts. Shoban v. Board of Trustees, 276 Cal.App.2d 534, 546, 81 Cal.Rptr. 112, 119 (1969).
 
 
 23
 When contracting parties labor under a mutual mistake of law, however, " 'acts performed in reliance upon such mutual mistake do not, as a matter of law, create an estoppel.' (Citations omitted.)" Henry v. City of Los Angeles, 201 Cal.App.2d 299, 20 Cal.Rptr. 440, 445 (1962). We hold that, as a matter of law, Shamrock's supposed reliance upon alleged misstatements of dedication authority by city officials does not create an estoppel barring the City from asserting the April 12, 1977 contract.
 
 
 24
 A California municipal planning board may require a reasonable, uncompensated dedication of land for public use as a condition of giving official approval to private development of other property. Ayers v. City Council of Los Angeles, 34 Cal.2d 31, 39, 207 P.2d 1, 5 (1949); People ex. rel. Department of Public Works v. Curtis, 255 Cal.App.2d 378, 63 Cal.Rptr. 138 (1967); Cal.Gov't Code § 66475, et seq. Shamrock bases its estoppel claim on the articulation by city officials of their assumption that the dedication conditions concerning Parcels D and E were "reasonable." Shamrock believed these representations. But "(an) expression of opinion as to a matter of law is not a basis for estoppel, at least in the absence of actual or professed special knowledge or confidential relationship." Gilbert v. City of Martinez, 152 Cal.App.2d 374, 313 P.2d 139, 141 (1957). Shamrock does not contend that it was in a confidential relationship with the City, and it failed to adduce any evidence below to suggest that in April 1977 the City possessed special knowledge that a federal jury would deem the dedication requirements unreasonable. The record does not suggest that the city officials were not negotiating under a good faith belief that they were following the law. Henry v. City of Los Angeles, 201 Cal.App.2d 299, 20 Cal.Rptr. 440, 445 (1962).[2] The City felt that its dedication requirements were reasonable. A trier of fact subsequently disagreed. This alone will not support an equitable estoppel claim. The estoppel issue should not have been submitted to the jury.
 
 
 25
 The contract between Shamrock and the City of Concord was entered into at arms' length, was not infected with fraud or overreaching in the inducement, and is not subject to defeasance merely because, upon receiving legal advice after negotiating a million dollar land development deal, Shamrock had second thoughts about it. The contract bars all recovery except the $43,000 found by the jury to be the value of Parcel D.
 
 
 26
 The City's contention that the $43,000 award for Parcel D should be reversed on the ground that remarks by Shamrock's counsel concerning the city's appraiser unduly prejudiced the jury is without merit. The references to an American Institute of Real Estate Appraisers Ethics Committee investigation of the city's appraiser and the court's discussion in the presence of the jury were brief, vague, and followed shortly thereafter by an admonition to disregard the statements. The remarks did not prejudice the City, and substantial evidence supports the $43,000 award for Parcel D.
 
 
 27
 The district court upheld the remitted damages award of $105,590 under a contract theory. We find no evidence in the record to suggest an implied agreement by the City to compensate Shamrock for Parcel E. All sums in excess of the $43,000 must be denied as having no foundation in contract, and none in inverse condemnation.
 
 
 28
 Shamrock contends that the district court erred by denying Shamrock's motion for attorney's fees under Cal.Code of Civ.Proc. § 1036, which provides that a prevailing plaintiff in an inverse condemnation action shall receive reasonable attorney, appraiser and engineering fees. This argument fails because the ground for partial relief in this case is contract rather than inverse condemnation.
 
 
 29
 Because of our disposition of this case, we need not reach other alleged errors briefed and argued by both parties.
 
 
 30
 The judgment in favor of Shamrock is affirmed to the extent of $43,000, plus costs and disbursements in the trial court, and interest thereon at the lawful rate from September 10, 1977. In all other respects, the judgment is vacated. No party is to recover costs in this court.
 
 
 31
 Affirmed as modified.
 
 
 
 *
 The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Because of our disposition of this case, we also need not decide whether Shamrock's failure to challenge the dedication requirements before building the road prevented it from subsequently seeking inverse condemnation damages. See, e. g., Pfeiffer v. City of La Mesa, 69 Cal.App.3d 74, 78, 137 Cal.Rptr. 804, 806 (1977); County of Imperial v. McDougal, 19 Cal.3d 505, 511, 564 P.2d 14, 18, 138 Cal.Rptr. 472, 476, appeal dismissed, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977)
 
 
 [2]
 Shamrock contends that city officials failed to disclose that they did not intend to accept Shamrock's dedication offer, and that they attempted to secure the dedication of Parcel E in exchange for granting Shamrock access rights to Willow Pass Road that Shamrock in fact already owned. Assuming these claims are true, however, the record contains no evidence that these misrepresentations or concealments were material to Shamrock's decision to sign the April 12, 1977 agreement. See: Henry v. City of Los Angeles, 201 Cal.App.2d 299, 20 Cal.Rptr. 440 (1962)