[No. C052159. Third Dist. Mar. 28, 2007.]

GRETA JORDAN, Plaintiff and Appellant, v.
CITY OF SACRAMENTO, Defendant and Respondent.

1488

COUNSEL

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, C. Athena Roussos; Zappettini, Sherbakoff & Bradley, Paul R. Zappettini and Shanie N. Bradley for Plaintiff and Appellant.

Eileen M. Teichert, City Attorney, and James F. Wilson, Deputy City Attorney, for Defendant and Respondent.

OPINION

**DAVIS, Acting P. J.**—After tripping and falling on a public sidewalk, plaintiff Greta Jordan filed a claim for tort damages with defendant City of Sacramento (City) in October 2003. In January 2004, the City notified her that it had rejected her claim by operation of law. In August 2004, she filed the present action against the abutting property owner, the Capitol Area Redevelopment Authority (CADA).[1] In April 2005, she filed an amended pleading with leave of court adding the City as defendant.

[1] CADA is not a party to this appeal.

Defendant City successfully moved for summary judgment on the ground that plaintiff did not file her action until more than six months from the date of the notice of the rejection of her claim. (Gov. Code, §§ 905, 910, 911.2, 912.4, 913, 945.6.) Plaintiff has appealed in timely fashion from the judgment, contending defendant City should be estopped from asserting the limitations period as a defense. We shall affirm.

LIABILITY FOR SIDEWALK INJURIES

The liability of an abutting property owner for injuries resulting from a defective sidewalk was apparently a source of confusion for the parties and their lawyers. We shall therefore provide a summary of the relevant principles.

Under the common law, a landowner does not have any duty to repair abutting sidewalks along a public street, and does not owe any duty to pedestrians injured as a result of a defect in the sidewalks. (*Schaefer v. Lenahan* (1944) 63 Cal.App.2d 324, 326 [146 P.2d 929] (*Schaefer*).)

Under a statute whose origins are nearly a century old, "The owners of lots . . . fronting on any portion of a public street . . . when that street . . . is improved . . . , shall maintain any sidewalk . . . ." (Sts. & Hy. Code, § 5610; see *Williams v. Foster* (1989) 216 Cal.App.3d 510, 516–517 & fn. 8 [265 Cal.Rptr. 15] (*Williams*).) This imposes a *duty of repair* on the abutting property owners for defects in sidewalks, regardless of who created the defects, but does not of itself create *tort liability* to injured pedestrians or a *duty to indemnify* municipalities, except where a property owner created the defect or exercised dominion or control over the abutting sidewalk. (*Schaefer, supra*, 63 Cal.App.2d at pp. 327–328, 331–332; *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1331–1335 [96 Cal.Rptr.2d 364]; *Williams, supra*, 216 Cal.App.3d at pp. 515–517, 521–522; *Jones v. Deeter* (1984) 152 Cal.App.3d 798, 803–805 [199 Cal.Rptr. 825] (*Jones*); *Low v. City of Sacramento* (1970) 7 Cal.App.3d 826, 834 [87 Cal.Rptr. 173] [county (the abutting property owner) liable because it exercised control over city easement for sidewalk and parking strip, thus exclusion in Gov. Code, § 830, subd. (c) does not apply; cited with apparent approval on point that control *is* more important than title in *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1159 [60 Cal.Rptr.2d 448, 929 P.2d 1239]]; see *Gonzales v. City of San Jose* (2004) 125 Cal.App.4th 1127, 1137 [23 Cal.Rptr.3d 178] (*Gonzales*); 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1092, pp. 421–423.) This limitation on tort liability to third parties is often referred to as the

"Sidewalk Accident Decisions Doctrine." (*Contreras v. Anderson* (1997) 59 Cal.App.4th 188, 195, fn. 6 [69 Cal.Rptr.2d 69] (*Contreras*).)

A municipality may alter these principles by ordinance with clear and unambiguous language imposing liability on a property owner for sidewalk injuries. (*Gonzales*, *supra*, 125 Cal.App.4th at pp. 1134, 1139 [San Jose ordinance, amended in light of *Williams*, now imposed tort liability]; see *Contreras*, *supra*, 59 Cal.App.4th at pp. 195–196 [Berkeley ordinance does not impose tort liability in clear and unambiguous language]; *Williams*, *supra*, 216 Cal.App.3d at pp. 521–522 [San Jose ordinance merely echoes a duty to maintain provided by statute].)

Sacramento City Code (hereafter, the City Code) section 12.32.020 defines a property owner's duty to repair a defective sidewalk: "An owner shall have the duty to repair any defective sidewalk fronting on such owner's lot . . . . Where the defective sidewalk is caused in whole or in part by a tree root or roots, the owner shall nevertheless have the duty to repair the sidewalk . . . ." Section 12.32.040 of the City Code addresses "Civil liability for injuries." It provides, "An owner who has a defective sidewalk fronting on such owner's lot, . . . *shall bear the civil liability*, if any, to a person suffering personal injury or property damage caused by the defective sidewalk. In the event that the city is held liable in any civil action for damages for personal injury or property damage caused by a defective sidewalk, the city shall be entitled to *full indemnity* from the owner."[2] (Italics added.) The City Code also asserts, "It is the purpose of this article to provide sidewalk repair procedures which are alternative and supplementary to the procedures set forth in the Streets and Highways Code . . . , commencing at Section 5600, as those sections now exist or may hereafter be amended or renumbered. The city, in each instance, may follow the procedure set forth in the

[2] It is questionable whether this provision shifting *all* tort liability to property owners (regardless of whether defendant City might be responsible for the dangerous condition, such as root damage from a municipal tree) and requiring property owners to indemnify defendant City fully is constitutional. *Gonzales* specifically cited the fact that the ordinances did not absolve the municipality of tort liability that might otherwise exist under Government Code section 835 (*City & County of S. F. v. Ho Sing* (1958) 51 Cal.2d 127, 138 [330 P.2d 802]; *Peters v. City & County of San Francisco* (1953) 41 Cal.2d 419, 428–430 [260 P.2d 55]; *Jones, supra*, 152 Cal.App.3d at p. 805 [city's liability for tree it owned and maintained]) in finding that the latter did not preempt them. (*Gonzales, supra*, 125 Cal.App.4th at pp. 1135–1136, 1138–1139.) Similar questions are raised in connection with the provision shifting defendant City's responsibility to repair sidewalk damage caused by its trees. The issues are not directly before us (though defendant City might wish to revisit its ordinance in light of this authority).

Streets and Highways Code or those set forth in this article, or some combination thereof." (City Code, § 12.32.050.)

In light of the above settled law, a reasonable attorney should be aware at the outset of a claim for injuries from a defective sidewalk that both a property owner and a municipality can each be at least partially liable to a plaintiff (including a public agency with notice of the defect). We now turn to the circumstances of the present case.

### Scope of Review

Summary judgment provides a court with a procedure to pierce pleadings in order to determine whether a trial is truly necessary to resolve the dispute between the parties. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

Under the "historic paradigm" for our de novo review of a motion for summary judgment (*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734–735 [60 Cal.Rptr.2d 710]), we first identify the material issues as framed in the pleadings. If the movant has established a prima facie entitlement to judgment in its behalf on these issues, we consider whether the opponent has produced evidence creating a factual conflict with respect to one of these issues that can be resolved only at trial. (*Ibid.*)

### Pleadings

Given the basis for defendant City's motion, our focus is narrow. Plaintiff, as noted, filed her claim with defendant City in October 2003, a little over a month after the incident on September 9. According to the claim (incorporated by reference in the amended pleading), the 61-year-old plaintiff was walking north on the east side of 15th Street in downtown Sacramento at 9:45 a.m. when she caught her left toes on an upraised portion of the sidewalk in front of 1317 15th Street, an "apartment and general office complex," and fell injuring her left wrist, shoulder, and knee. She sought damages of $75,000. She claimed that the condition of the sidewalk was the result of growing roots "or some other natural occurrence," and it "had existed for a long enough period of time" to give defendant City constructive notice of the defect.

On November 24, 2003, a representative of defendant City "informed plaintiff's counsel that, pursuant to City Code section 12.32.040, the . . . defendant was not responsible for the maintenance of the sidewalk" and

would submit the claim to the property owner (CADA). Plaintiff's lawyer relied on this representation that defendant City was not responsible, and after receiving notice of the rejection of the claim against the City by operation of law, the lawyer filed a claim with CADA in February 2004 (now seeking $150,000). After CADA rejected the claim by operation of law in April 2004, plaintiff filed her original complaint in August 2004 solely against CADA.

### Defendant's Showing

In its evidence in support of its motion for summary judgment, in addition to the various pleadings and the claim form, defendant City included a copy of the November 24 communication from its independent claims administrator (Bragg & Associates) to plaintiff's lawyer. The claims representative "advis[ed him] that the City does not own the property where [the] incident occurred." In addition to denying that the City had any notice of the defect in the sidewalk (and therefore was not liable under the Tort Claims Act; see Gov. Code, § 800 et seq.), the letter referred to City Code section 12.32.040 and its purported imposition of civil liability for sidewalk defects solely on the property owner. The letter stated that the claims representative would submit a copy of the claim "to the property owner for [its] review and handling," along with "the photographs."

Defendant City also included a copy of the affidavit of plaintiff's lawyer filed in connection with his motion to amend the complaint to add the City as a defendant. In this affidavit, the lawyer stated that he had also received a phone call a week before the November 24 letter, during which the City's representative stated that the City Code imposed liability on the abutting property owner (whom she identified as CADA). The lawyer also noted that the November 24 letter had included copies of the pertinent portions of the City Code and a form letter sent to property owners to notify them of the need to repair a sidewalk identified as defective. In January 2004, after being told defendant City would no longer investigate the matter because it had "turned it over to CADA," plaintiff's attorney sent a letter to CADA stating that defendant City had disclaimed liability, and asking CADA to identify any other " 'entities/persons responsible for the maintenance and control of the . . . property.' " A different claims representative with Bragg & Associates, which also had CADA as a client, contacted plaintiff's lawyer. In December 2004, an attorney for CADA sent a letter to plaintiff's lawyer, asserting that CADA was not liable and should be dismissed from the action because the City was the responsible party.

In its motion for summary judgment, defendant City asserted that the original complaint was untimely on its face, since it was filed more than six months after the notice of rejection of the claim. It also asserted that any representations from its claims administrator were insufficient to establish estoppel.

PLAINTIFF'S SHOWING

Plaintiff did not dispute any of the above facts, except for the manner in which defendant City characterized the effect of the November 24 letter. Plaintiff included additional facts in support of her claim of estoppel.

Plaintiff's lawyer was apparently present when the claims representative inspected the location of the accident on November 13, 2003, and hand delivered a letter to her at that time with photographs of the location. The letter concluded, "Please advise whether any other public entity may be responsible for the location of this injury."

Plaintiff's lawyer asserted that despite his request in his January 2004 letter to CADA, its claims representative never identified any other public entity that might be liable. He had named only CADA in the original complaint because he had relied on defendant City's disclaimer: "Had defendant City not advised plaintiff that it was not responsible for this loss, a lawsuit would have been timely filed naming City as a defendant."

After serving the complaint on CADA in November 2004, CADA's attorney sent a copy of its answer and a letter asserting for the first time that defendant City, not CADA, was the liable entity.[3] In July 2005, plaintiff's lawyer spoke with an attorney for defendant City, who stated that he did not see a basis for CADA's liability because a public entity cannot have liability imposed by ordinance.[4] In response, plaintiff's lawyer sent a letter stating that

---

[3] The actual letter was included with plaintiff's lawyer's supplemental declaration in opposition to the motion. In it, the CADA attorney relied on the general rule of nonliability for abutting property owners (citing *Jones*) and an unpublished decision of this court, which had held (without extended analysis) that the ordinance regarding the civil liability of abutting property owners was nothing more than a provision for indemnification and therefore did not create a duty to pedestrians on the part of the property owners.

[4] This representation did not expressly address the authority we have discussed above under which a public entity could be liable for sidewalk injuries as an owner of dangerous property if it exercised control over the sidewalk easement on its property and had notice of the defect. It may well be that defendant City's attorney meant that CADA cannot be liable because it did not satisfy either of these criteria and the ordinance would be ineffective in *that* circumstance to impose liability on CADA. The record does not include the exact remarks of defendant City's attorney, only his opponent's recollections of them in his letter responding to the call and in his declaration.

he would dismiss CADA from the action and pursue only the City as a defendant. This letter also stated that plaintiff would rely on estoppel to defeat any defense based on the statute of limitations.

Plaintiff included the depositions of the two claims representatives for defendant City and CADA. The only facts premised on these depositions were the "purpose" of defendant City's claims representative in sending the November 24 letter, which was to show the liability of CADA as the abutting property owner, and the failure of CADA's claims representative ever to communicate a belief that defendant City was solely liable.

The supplemental declaration of plaintiff's lawyer described his legal research after receiving the November 24 letter asserting defendant City's nonliability. "I promptly looked the ordinance up on the City's website to verify both the language . . . and that [it] was still an active city code. . . . [¶] I next conducted research to determine if an appellate court . . . had found the [ordinance] to be unconstitutional. I was unsuccessful in finding any such published decision. I had no other reason to believe that the City's own ordinance was not valid in limiting the liability of the City for injuries occurring on sidewalks within the City." He thus relied on the letter to pursue only CADA. Until the CADA attorney referred him to the unpublished decision of this court in December 2004, he did not have any basis to believe that CADA was not liable as an abutting property owner.

## Ruling

The trial court found the evidence was undisputed that the original complaint was untimely as to the claim against defendant City. As for estoppel, "she is essentially arguing that her lawyer was misled as to the law by a claim form submitted by a non-lawyer. Furthermore, there is no evidence that counsel diligently researched the legal position asserted in the form letter, nor is there any evidence that the City did anything other than send the form letter." The trial court rejected as "[u]nsupported and speculative" any assertion of a conspiracy between defendant City and CADA to delay her claim against defendant City. It also found immaterial that neither claims representative responded to the request of plaintiff's lawyer to identify responsible parties.

## Discussion

As the evidentiary showings of the parties demonstrate, the material facts are not in dispute in the present matter. Rather, it is the legal significance to be accorded them. We therefore proceed to the question of whether defendant City is entitled to judgment in its favor.

As with any other question of fact, estoppel presents only a question of law that we review de novo if there are undisputed facts. (*Cal. Cigarette Concessions v. City of L. A.* (1960) 53 Cal.2d 865, 868 [3 Cal.Rptr. 675, 350 P.2d 715] (*Cal. Cigarette*).)

Estoppel has a number of elements, all of which must be present. (13 Witkin, Summary of Cal. Law, *supra*, Equity, § 191, p. 528.) The estopped party must either misrepresent or conceal material facts with knowledge of the true facts (or gross negligence as to them) and with the intent that another who is ignorant of the facts will rely on the misrepresentation or concealment; an intent to deceive is not necessary. (*Id.* at pp. 527–528, § 192, p. 530; *Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 987 [41 Cal.Rptr.3d 48]; *Henry v. City of Los Angeles* (1962) 201 Cal.App.2d 299, 307 [20 Cal.Rptr. 440] (*Henry*).)

A public agency is subject to estoppel from the assertion of either the time limits for filing tort claims, or the statute of limitations on a cause of action. (13 Witkin, Summary of Cal. Law, *supra*, § 200(1), pp. 541–542; *Fredrichsen v. City of Lakewood* (1971) 6 Cal.3d 353, 357 [99 Cal.Rptr. 13, 491 P.2d 805] (*Fredrichsen*).)

Estoppel generally involves misrepresented or concealed *facts*. (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152 [113 Cal.Rptr.2d 70, 33 P.3d 487] [insurer's legal conclusions regarding coverage do not create estoppel; there must be misrepresentation of *facts* underlying the claim]; *Neff v. New York Life Ins. Co.* (1947) 30 Cal.2d 165, 174–175 [180 P.2d 900] [same]; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1145 [271 Cal.Rptr. 246] [same]; *Kunstman v. Mirizzi* (1965) 234 Cal.App.2d 753, 757 [44 Cal.Rptr. 707] (*Kuntsman*) [for estoppel, " ' "it must appear that the misrepresentation was one of fact" ' "].)

Plaintiff ineffectually attempts to distinguish these cases as involving insurance. To the contrary, these cases simply reflect the black-letter principle that (in the absence of a confidential relationship) where the material facts are known to both parties and the pertinent provisions of law are equally accessible to them, a party's inaccurate statement of the law or failure to remind the other party about a statute of limitations cannot give rise to an estoppel. Some cases assert that this simply amounts to a "mutual mistake of law" and others remark that the estoppel elements of ignorance and *reasonable* reliance are absent. (*Cal. Cigarette*, *supra*, 53 Cal.2d at p. 871; *People v. Stuyvesant Ins. Co.* (1968) 261 Cal.App.2d 773, 783–784 [68 Cal.Rptr. 389] (*Stuyvesant Ins.*); *Henry*, *supra*, 201 Cal.App.2d at pp. 307–308, 310; *Gilbert v. City of Martinez* (1957) 152 Cal.App.2d 374, 377–378 [313 P.2d 139]; *Joseph George, Distr. v. Dept. Alc. Control* (1957) 149 Cal.App.2d 702,

712–713 [308 P.2d 773] (*George*); *Boericke v. Weise* (1945) 68 Cal.App.2d 407, 418 [156 P.2d 781]; *Robbins v. Law* (1920) 48 Cal.App. 555, 560 [192 P. 118].)

The invocation of estoppel is particularly inappropriate where the party seeking it was represented by counsel at the time of the misrepresentation of law. (*Cal. Cigarette*, *supra*, 53 Cal.2d at p. 871; *Stuyvesant Ins. Co.*, *supra*, 261 Cal.App.2d at p. 784 [noting that "[t]he law was as open to Stuyvesant's counsel as it was to the district attorney"]; *George*, *supra*, 149 Cal.App.2d at pp. 712–713; *Kunstman*, *supra*, 234 Cal.App.2d at p. 757 [estoppel is "disfavored" under such circumstances].) Plaintiff claims that it is irrelevant whether a party seeking to invoke estoppel has an attorney, citing *Kleinecke v. Montecito Water Dist.* (1983) 147 Cal.App.3d 240 [195 Cal.Rptr. 58] and *Sumrall v. City of Cypress* (1968) 258 Cal.App.2d 565 [65 Cal.Rptr. 755]. *Kleinecke*, however, represents the concealment of a material *fact*—namely, that the plaintiff's attorney had sued the wrong public entity, which shared an attorney with the correct defendant; the attorney decided on the strategy of allowing the plaintiff to proceed against the wrong party until the limitations period expired (which included failing to raise this issue in the answer of the incorrect defendant). (147 Cal.App.3d at pp. 242–243, 246–247.) As for *Sumrall*, it stated that the issue of legal representation "is not dispositive of the issue of estoppel" in the context of determining that a nonattorney can *be estopped* for affirmatively inducing an attorney to refrain from bringing suit until after the limitations period expired. (258 Cal.App.2d at p. 570.)[5] The case does not have any bearing on whether a party's attorney can reasonably be misled regarding the law through an opponent's misrepresentation.

Plaintiff correctly notes that in two cases involving the assertion of estoppel against a public agency, the Supreme Court did not distinguish between misrepresentations of fact and of law. *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297 [61 Cal.Rptr. 661, 431 P.2d 245] (*Driscoll*), in the specific context of a claim "prosecuted against [a public agency] by an employee, former employee[,] or other person deriving [a] claim from either," stated estoppel can be applied where the public agency gave advice to a claimant on substantive rights against it and the public agency "acted in an unconscionable manner or otherwise set out to . . . take unfair advantage." (*Id.* at p. 306.) *Driscoll* developed a number of factors to consider in two categories, one of which focused on the culpability of the public agency and the other on the impact of the advice on the claimant (*ibid.*), and any of these factors might be determinative in a given situation. (*Id.* at pp. 309–310.) Under the first category, a court considers whether the agency acted in bad

[5] Similarly, in *Fredrichsen*, a "mere clerk[]" can make the representations estopping a public agency. (*Fredrichsen, supra*, 6 Cal.3d at p. 357.)

faith, purported to "advise and direct" the claimant rather than merely "inform and respond," and acted with certitude in dispensing the advice. (*Id.* at p. 307.) The advice must be negligent at the time it is made, rather than becoming inaccurate only in light of later legal developments. (*Id.* at pp. 306–307.) Under the other category, the factors include the existence of a confidential relationship between the agency and the claimant (*Driscoll* specifically distinguishing this broader term from a fiduciary relationship), the nature of the right asserted, and whether the "claimant is one who purports to have no knowledge or training which would aid him in determining his rights and the public agency purports to be informed and knowledgeable [on the subject]." (*Id.* at pp. 308–309 & fn. 11.)

In estopping the public agency from asserting the statute of limitations, *Driscoll* cited the pension board's certainty in advising and directing the claimants as to their rights to a pension (acknowledging that the advice at the time was not negligent), described the relationship between the pension board and the claimant as confidential, and placed particular emphasis on the right at issue (the entitlement of a widow to a pension). (*Driscoll, supra,* 67 Cal.3d at pp. 310–311.) However, in allowing the widows to pursue their *entitlement* despite the expiration of the statute of limitations, the court did not find the right to retroactive compensation beyond the city's six-month time limit for claims against it to be sufficiently fundamental to warrant estoppel (given that the pension board's advice had been in good faith and was not unreasonable). (*Id.* at p. 311.)

*Fredrichsen* applied these factors in the context of a tort claim against a public agency. (*Fredrichsen, supra,* 6 Cal.3d at pp. 355–356, 358.) Despite the fact that the city exercised control over the maintenance of a sidewalk where the unrepresented claimant fell, its clerk made the implicit representation that the property owner was the responsible party (sending the claimant a copy of the city's letter to the property owner regarding its responsibility for maintenance of the defective sidewalk rather than the claim form that she had requested). The claimant consequently pursued settlement unsuccessfully with the property owner, and retained an attorney to file suit just short of a year after her injuries (the attorney found out that the city was indeed the party maintaining the sidewalk). (*Id.* at pp. 355–356.) In estopping the city from asserting the statute of limitations, *Fredrichsen* found the city's implicit representation to be negligent (as it should have known whether or not *it* maintained the sidewalk) and to be an attempt to advise and direct the plaintiff (in a direction away from itself). While a confidential relationship did not exist, the plaintiff would not have any way of knowing the identity of the party that maintained the sidewalk and the letter to the property owner "held [the city] out as having such special knowledge." (*Id.* at pp. 358–359.) It also described the right to sue as "fundamental" (without analysis). (*Ibid.*)

As our digest earlier in the opinion demonstrates, the law governing liability for sidewalk accidents is neither arcane nor inaccessible. All parties were aware of all facts material to plaintiff's action before the time to file a claim against defendant City expired. At best, the attorneys for the parties operated under mistakes of law (whether unilateral or mutual). Therefore, unless plaintiff can shoehorn herself within the holdings of *Driscoll* and *Fredrichsen*, she may not estop defendant City from asserting the time limit for her tort claim against it.

Neither bad faith on the part of defendant City nor any form of confidential relationship with plaintiff is present. It is evident that defendant City purported to advise and direct plaintiff with certitude to sue only CADA for damages from her fall, depriving her of a "fundamental" right (at least according to *Fredrichsen*). These factors, however, would be present in any situation where a public entity denied liability for a tort claim, and therefore cannot of themselves warrant a judicial disregard for the legislatively imposed time limitation on claims against public entities. With respect to whether the advice was culpably negligent, no case before *Gonzales* had discussed the constitutional bar to a municipality's effort to abjure tort liability entirely for sidewalk injuries that are attributable in part to the municipality's own neglect. However, a public entity's liability for hazardous conditions of public property "is subject to any immunity . . . provided by *statute*" (Gov. Code, § 815, subd. (b), italics added), and is an issue "of statewide concern and should be subject to uniform rules established by the action of the *Legislature*" (Legis. Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 815, p. 167, italics added). Therefore, defendant City should know full well that it could not insulate itself from liability that otherwise might exist under the Tort Claims Act.[6] Nevertheless, we find such factors as are present lack sufficient weight in light of plaintiff having legal representation at the time she filed her claim with defendant City. In this circumstance, claimant is *not* a person lacking knowledge or training that would aid in determining her rights compared with the public agency, as opposed to the plaintiffs in *Fredrichsen* (*Fredrichsen, supra*, 6 Cal.3d at p. 356) and *Driscoll* (*Driscoll, supra*, 67 Cal.2d at pp. 302–303, 310), who did not obtain representation until after the time to file a claim had expired. As a result, we conclude that defendant City did not conduct itself in an unconscionable manner, nor did it take any unfair advantage over plaintiff such that we can estop it from asserting the limitations period as a defense.

[6] "[U]nless . . . granted specific *statutory* immunity, a public entity . . . [is] liable in tort for the same causes of action that could be brought against a private person . . . ." (*Lueter v. State of California* (2002) 94 Cal.App.4th 1285, 1300 [115 Cal.Rptr.2d 68], italics added.)

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Robie, J., concurred.

On April 11, 2007, the opinion was modified to read as printed above.