Filed 9/29/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BONNIE BEAN,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF THOUSAND OAKS,<br><br>    Defendant and Appellant;<br><br>GINA L. GOODE,<br><br>    Defendant and Respondent. | 2d Civ. No. B338497<br>(Super. Ct. No. 56-2021-<br>00561100-CU-PO-VTA)<br>(Ventura County) |

When a defendant brings a motion for summary judgment, must a codefendant file a cross-complaint to obtain standing to oppose the motion?  (Code Civ. Proc., § 437c,[1] subd. (p)(2).)  Here we hold that a codefendant with an adverse interest has standing to oppose a motion for summary judgment whether it has filed a cross-complaint or not.

---

[1] Subsequent references to section 437c are to Code of Civil Procedure section 437c.

After tripping on a sidewalk, Bonnie Bean sued the owner of a nearby residence, Gina L. Goode, and the City of Thousand Oaks (the City) for general negligence and premises liability. The City appeals from the order granting summary judgment against Bean in favor of Goode.[2] We conclude the trial court erred in not considering the City's opposition to the motion for summary judgment for two reasons. First, the City was not required to file a cross-complaint to have standing to oppose summary judgment. And second, here the City did file a cross-complaint. We nevertheless affirm the judgment because there is no triable issue of material fact regarding Goode's liability.

FACTUAL AND PROCEDURAL HISTORY

Bean tripped and fell on a raised portion of sidewalk in front of a residence owned by Gerardo and Carie Rodriguez. Bean sued the Rodriguezes and the City for negligence, premises liability, and dangerous condition of public property. The City's answer included an affirmative defense alleging "sole or partial negligence of third parties." Bean then amended the complaint to add Goode, who owned the house next door.

Bean's claim against Goode was based on the theory that the damage to the sidewalk was caused by a tree in the parkway (the landscaped area between the curb and sidewalk) located in front of Goode's house, whose roots extended below the sidewalk in front of the Rodriguez property. According to a memorandum from the City's public works department, "in the parkway . . . is a privately-owned, City-maintained White Mulberry street tree" whose "roots . . . may have caused or contributed to the sidewalk

_____

[2] Bean is not a party to this appeal.

2

damage." The memorandum states, "The tree appears to be an original street tree planted by the developer of the tract in the late 1960s." It also states the City inspects, maintains, and repairs the sidewalks.

Goode filed a motion for summary judgment. She contended she did not create the dangerous condition nor own or control the sidewalk. Bean did not oppose the motion. The City filed an opposition to the motion, a request for judicial notice, evidentiary objections, and a statement of undisputed material facts. Goode replied, contending in part that the City did not have standing to oppose her summary judgment motion because it had not filed a cross-complaint.

Three weeks later, when the motion was heard, the City advised the court it had filed a cross-complaint that same morning. But the court clerk then issued a notice stating it rejected filing of the cross-complaint.

The trial court ruled the City lacked standing to oppose the motion and declined to consider the City's opposition documents. The court granted summary judgment against Bean in favor of Goode. The City appeals the judgment.

DISCUSSION

*Standing of codefendant*

Goode contends that section 437c, subdivision (p)(2) precluded the City from opposing Goode's motion for summary judgment because the City had not filed a cross-complaint against her. During the pendency of this appeal, our colleagues in Division 2 of the Fourth District Court of Appeal resolved this issue. It concluded that when a defendant moves for summary judgment, but the plaintiff does not oppose the motion, another defendant with an adverse interest may oppose the motion

3

without the necessity of filing a cross-complaint. (*RND Contractors v. Superior Court* (2025) 112 Cal.App.5th 697, 699 (*RND*).) We reach the same conclusion.

At issue is interpretation of section 437c, subdivision (p)(2), which provides in part: "A defendant or cross-defendant has met that party's burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."

"Statutory interpretation is a question of law that we review de novo. [Citation.] 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. . . . We do not examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.) "If the terms of the statute are unambiguous, . . . the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 (*Griswold*).)

We must " ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the

4

statute, and avoid an interpretation that would lead to absurd consequences.' " ' " (*Griswold*, *supra*, 25 Cal.4th at p. 911.)

Here, the reference to "the plaintiff or cross-complainant" in subdivision (p)(2) of section 437c is ambiguous. It either limits the parties who may oppose a defendant's motion for summary judgment, or merely codifies the burden of proof in such a motion. We conclude the latter interpretation is appropriate based on the statute's legislative history and its purpose. (*Griswold*, *supra*, 25 Cal.4th at p. 911.)

The language quoted above regarding the parties' respective burdens of production in the context of a moving defendant's summary judgment motion was first added (with minor wording differences) as former subdivision (n)(2) of section 437c in 1992. (Assem. Bill No. 2616 (1991–1992 Reg. Sess.); Stats. 1992, ch. 1348, § 1, pp. 6699, 6702–6703.) "The purpose of the 1992 amendment was 'to move summary judgment law' in [California] 'closer' to its 'federal' counterpart . . . in order to liberalize the granting of such motions." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 848 (*Aguilar*).) Rule 56(d) of the Federal Rules of Civil Procedure allows a "nonmovant" to oppose a motion for summary judgment.

A Senate committee report describes the purpose of the 1992 amendment as "[s]pecif[ing], for purposes of a summary judgment motion, the burden of proof required of a plaintiff to establish that there is no defense to a cause of action, and of the defendant to show that a cause of action has no merit." (Sen. Com. on Judiciary, com. on Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Aug. 12, 1992, p. 4.) "This bill would follow the federal example and require each party seeking a summary judgment to prove up its own case without having to negate

claims of the opposition." (*Id*. at p. 9, quoted in *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 585.) Nothing in the legislative history suggests an intent to limit who may oppose a motion for summary judgment.

"The purpose of federal summary judgment law, which is identical to the purpose of ours, is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar*, *supra*, 25 Cal.4th at p. 844.) "[T]o conclude otherwise would be contrary to the apparent intent of the statute and the strong policy against disposing of cases on procedural deficiencies rather than trying cases on the merits." (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1085 [summary judgment improper based on lack of opposition where moving party has not met its burden].)

The term "cross-complainant" appears only in subdivision (p) of section 437c. Neither the 1992 amendment nor any other legislation limits the right to oppose a motion for summary judgment to a "plaintiff or cross-complainant." And neither the amendment nor any legislation changes the rule that opposition to a motion for summary judgment may be filed by "the opposing party," including a defendant. (§ 437c, subd. (b)(3).) Similar language was used to describe a defendant's burden of proof in *Segura v. Brundage* (1979) 91 Cal.App.3d 19, 28–29: " '[O]n the motion for summary judgment, the moving party must generally negative the matters which the *resisting party* would have to prove at the trial.' " (Italics added.) *Segura* did not limit the "resisting party" to a plaintiff or cross-complainant, and this principle was unchanged by the 1992 amendment.

Allowing parties with an adverse interest to oppose

6

summary judgment furthers the purpose of determining what issues must be resolved at trial. It also serves "the strong public policy favoring disposition on the merits [which] outweighs the competing policy favoring judicial efficiency." (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 (*Bahl*) [policy favored continuing summary judgment hearing].) In this personal injury action, " 'liability can be apportioned in the main action[,]' " and the City was not required to file a cross-complaint. (*Paragon Real Estate Group of San Francisco, Inc. v. Hansen* (2009) 178 Cal.App.4th 177, 186.) And because the City's answer raised an affirmative defense of "sole or partial negligence of third parties," the City and Goode were "trying to escape liability by blaming someone else for Plaintiff['s] damages." (*RND*, *supra*, 112 Cal.App.5th at p. 705.)

Thus, the City and Goode were adverse parties "even [if] there [were] no cross-claims between them." (*RND*, *supra*, 112 Cal.App.5th at p. 706.) The City had " ' "a dog in this fight," ' " even though "the parties [were] not 'on opposite sides of the "v." ' " (*Independent Living Center of Southern California v. City of Los Angeles* (C.D.Cal. 2016) 205 F.Supp.3d 1105, 1109 [allowing codefendant to oppose defendant's motion for summary judgment without filing cross-claim].)[3] But granting summary

_____

[3] Federal district court cases are split as to whether a defendant who has not filed a crossclaim has standing to oppose a codefendant's motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.). *(*See *RND, supra*, 112 Cal.App.5th at p. 703; cases cited in *Coleman v. Anco Insulations, Inc.* (M.D.La. 2016) 196 F.Supp.3d 608, 610, fn. 3; Wolfson, *Warring Teammates: Standing to Oppose a Coparty's Motion for Summary Judgment* (2012) 60 Drake L. Rev. 561, 576–585.)

judgment in favor of one alleged tortfeasor, Goode, would preclude the City, as another alleged tortfeasor with an adverse interest to Goode, from seeking to attribute fault to Goode. (§ 437c, subd. (*l*).)  In our view, prohibiting a defendant with an interest adverse to that of another defendant from opposing a motion for summary judgment would run afoul of "the guiding principle of deciding cases on their merits rather than on procedural deficiencies."  (*Bahl*, *supra*, 89 Cal.App.4th at p. 398; *Thatcher v. Lucky Stores, Inc.*, *supra*, 79 Cal.App.4th at p. 1085.) Whether such a defendant filed a cross-complaint matters not.

In *Aguilar*, our Supreme Court explained that an adverse party could also oppose a summary judgment motion: "Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in [their] favor . . . . Likewise, *any adverse party may oppose the motion,* and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.'  [§ 437c, subd. (b).]  *An adverse party* who chooses to oppose the motion must be allowed a reasonable opportunity to do so.  [§ 437c, subd. (h)]."  (*Aguilar*, *supra*, 25 Cal.4th at p. 843, italics added.)

We agree with *RND* that "[t]his statement from *Aguilar* is dictum since there was no dispute in that case over who could oppose a summary judgment motion.  But dicta from our Supreme Court is 'highly persuasive and should generally be followed' unless there is good reason not to follow it."  (*RND*, *supra*, 112 Cal.App.5th at p. 704.)  It is persuasive here because it is consistent with the legislative history and goals of determining the issues to be adjudicated at trial and resolving

8

cases on their merits.  We conclude the trial court erred in failing to consider the City's opposition to Goode's summary judgment motion.  (§ 437c, subd. (c).)

*Filing of cross-complaint*

Even if the City were required to file a cross-complaint to oppose summary judgment, we conclude it did so here.

The City filed a cross-complaint against Goode before the hearing on the motion for summary judgment.  The court clerk issued a notice of rejection that stated the cross-complaint "cannot be processed" because leave of court was required.  But the purported rejection was erroneous.  Because the City's cross-complaint was against a codefendant, and not the plaintiff, it was properly filed without leave of court at "any time before the court has set a date for trial."  (Code Civ. Proc., § 428.50, subd. (b).)  When the cross-complaint was filed, a trial date had not yet been set.

And because the cross-complaint was "presented to the clerk's office for filing in a form that complie[d] with the rules of court, the clerk's office ha[d] a ministerial duty to file it."  (*Voit v. Superior Court* (2011) 201 Cal.App.4th 1285, 1287.)  "[A] paper is deemed filed when it is deposited with the clerk with directions to file the paper.  [Citation.]  Because here the clerk had no proper basis for rejecting [the cross-complaint], it must be deemed filed when it was presented."  (*Rojas v. Cutsforth* (1998) 67 Cal.App.4th 774, 778.)

Nor did the City filing its cross-complaint after its opposition to summary judgment disqualify it from opposing Goode's summary judgment motion.  The City filed its opposition at least 20 days before the hearing on the motion.  (§ 437c, subd. (b)(2).)  The statute does not require the cross-complaint be filed

9

before the opposition.

*Issue of material fact*

Our conclusion that the trial court erred in failing to consider the City's opposition to the motion for summary judgment does not end our inquiry.  We review a grant of summary judgment de novo.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)  "[W]e first identify the material issues as framed in the pleadings.  If the movant has established a prima facie entitlement to judgment in its behalf on these issues, we consider whether the opponent has produced evidence creating a factual conflict with respect to one of these issues that can be resolved only at trial."  (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1492 (*Jordan*).)

We have reviewed the motion for summary judgment and the City's opposition and conclude a cause of action against Goode cannot be established as a matter of law.  Accordingly, summary judgment was properly granted.

"Under the common law, a landowner does not have any duty to repair abutting sidewalks along a public street, and does not owe any duty to pedestrians injured as a result of a defect in the sidewalks."  (*Jordan*, *supra*, 148 Cal.App.4th at p. 1490; *Williams v. Foster* (1989) 216 Cal.App.3d 510, 515 (*Williams*).)  "The common law governs in the absence of legislation on the subject."  (*Williams*, at p. 515.)

Streets and Highways Code section 5610 provides: "The owners of lots or portions of lots fronting on any portion of a public street or place when that street or place is improved or if and when the area between the property line of the adjacent property and the street line is maintained as a park or parking strip, shall maintain any sidewalk in such condition that the

10

sidewalk will not endanger persons or property . . . save and except as to those conditions created or maintained in, upon, along, or in connection with such sidewalk by any person other than the owner."

Streets and Highways Code section 5610 "imposes a *duty of repair* on the abutting property owners for defects in sidewalks, regardless of who created the defects, but does not of itself create *tort liability* to injured pedestrians or a *duty to indemnify* municipalities, except where a property owner created the defect or exercised dominion or control over the abutting sidewalk." (*Jordan*, *supra,* 148 Cal.App.4th at p. 1490.) "This limitation on tort liability to third parties is often referred to as the 'Sidewalk Accident Decisions Doctrine.' " (*Id*. at pp. 1490–1491.)

The doctrine was applied in *Williams*, where "the surface of the sidewalk had been made uneven by the roots of a tree planted on the parkway in front of [defendant homeowner's] property." (*Williams*, *supra*, 216 Cal.App.3d at pp. 512–513.) The court concluded "the duty to maintain the sidewalk established by [Streets and Highways Code] section 5610" is not "owed to members of the public in the absence of clear and unambiguous legislative language." (*Id*. at p. 521.) As in *Williams*, no such language exists here.

Streets and Highways Code section 5610 does not create liability for Goode because the evidence is uncontradicted that Goode's property was not "fronting on" the portion of sidewalk in front of the Rodriguezes' property where Bean fell. Nor was there evidence that Goode exercised "dominion or control" over that portion of raised sidewalk where Bean tripped. And it was uncontradicted that she had not seen or noticed the sidewalk defect before the incident. (Cf. *Alpert v. Villa Romano*

11

*Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1332, 1341 [owner with knowledge of defect liable].)

There was no evidence that Goode "created the defect" by merely owning the home adjacent to the tree. (*Jordan*, *supra*, 148 Cal.App.4th at p. 1490.) Although the City stated that Goode owned the parkway and the tree, ownership of the parkway and the tree is not dispositive. To impose "potential liability for injuries caused by a dangerous condition of property . . . 'control dominates over title. "The crucial element is control." ' " (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1159.)

Undisputed evidence established that the City had trimmed and inspected the tree. There was no evidence that Goode had maintained or controlled the tree. Goode admitted she mowed the grass in the parkway but did not admit she maintained the tree.

A memorandum from the City's public works department acknowledged that the City maintained the tree and the sidewalk. In a discovery response and in response to Goode's undisputed material facts, the City stated it did not "own" the tree, the parkway adjacent to it, or the sidewalk, but admitted it "regulates, controls, and maintains the public right-of-way easement adjacent to the tree located in the parkway." In response to interrogatories, the City stated it "does not technically 'maintain' the tree but . . . inspects and trims trees as need[ed] to insure vehicular and pedestrian clearances and may remove trees that. . . are causing damages to private or public infrastructure." The City also stated it trimmed the tree less than three years before the incident and inspected the tree less than two months before the incident.

Undisputed evidence thus established the City exercised

the " ' "crucial element [of] control." ' " (*Alcaraz v. Vece, supra,* 14 Cal.4th at p. 1159.) This conclusion is supported by the City's policies and ordinances. A City administrative policy stated that "street trees belong to the adjacent property owner; however, the City has authority over the right-of-way, public service easements, and all approved street trees located there on [*sic*]." The policy prohibited removal of street trees or pruning "live tissue" without City approval and gave the City the authority to remove street trees damaging public property.

The City also requested the trial court take judicial notice of a city ordinance that required the City to "remove trees within the public rights-of-way when such trees are causing damages to sidewalks." (Thousand Oaks Municipal Code § 7-2.907(b).) And the City requested judicial notice of an ordinance that provided, "[N]o person shall cut, remove, trim, or in any manner alter the condition of a street tree without obtaining approval from the City." (Thousand Oaks Municipal Code § 7-2.906(c).) These policies and ordinances support the conclusion that the City rather than Goode had control and responsibility for maintaining the tree.

The facts here are similar to those in *Jones v. Deeter* (1984) 152 Cal.App.3d 798. There, as here, roots from a tree in the parkway in front of the defendant's home created a "break" in the sidewalk upon which the plaintiff fell. (*Id.* at p. 801.) The Court of Appeal concluded that the defendant held title to and owned the parkway and the trees growing in it. (*Id.* at pp. 801–802.) The defendant "allegedly maintained" the parkway by cutting the grass and watering the grass and trees (*id.* at p. 801) and may have performed "minor care of the trees, such as removing fallen leaves or hanging branches." (*Id.* at p. 805.) But since the city's

13

practice was to make "major repairs" such as "digging up roots and repairing the sidewalk," "the city alone bore the duty to keep the trees in reasonably safe condition towards pedestrians." (*Ibid*.)  Accordingly, summary judgment was properly granted in favor of the property owner.  (*Id*. at p. 801.)

The uncontradicted evidence here regarding control over the tree is similar and warrants the same result.  Summary judgment was appropriate.

DISPOSITION

The judgment is affirmed.  Goode shall recover her costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

14

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____

Engle Carobini, Daniel J. Carobini and Krista M. Kessler for Defendant and Appellant.

Courtney D. Flannery & Associates, Michael H. Park and Nathan Shapiro for Defendant and Respondent.

No appearance for Plaintiff.